## BALCH et al. v. INVESTORS' ROYALTY CO. et al.

## No. 947.

District Court, N. D. Oklahoma.
July 5, 1934.

Albert C. Hunt, of Oklahoma City, Okl., and Horace H. Hagan and T. Austin Gavin, both of Tulsa, Okl., for complainants.

Benj. Mossman, of Tulsa, Okl., and J. H. Jarman, W. H. Brown, and Thomas W. Caffey, all of Oklahoma City, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

Complainants, minority stockholders of the defendant Investors' Royalty Company, Inc., a Delaware corporation, base their action upon alleged mismanagement of the corporate affairs by the defendant's officers and directors. The relief sought includes the cancellation of certain stock issued to defendant Fred T. Hildt, an accounting for diverted corporate funds and profits wrongfully realized by the individual defendants in the use of corporate funds, and for the appointment of a receiver of the assets of the corporation.

The corporation was organized in September, 1926, and, although chartered under the laws of Delaware, has transacted practically all its business in Oklahoma, with its main place of business located, and its records kept, in the city of Tulsa. Defendants Hildt, Mossman, and McAllaster have been directors since the organization of the corporation, and until some time in 1927 were the only directors. They have also acted as an executive committee for the management of the corporation. Hildt and Mossman are residents of this district, and McAllaster is a resident of New York.

The evidence discloses that since its organization, Hildt, as president and general manager, has been the guiding genius of the corporation, and the dominant figure in its management and control. It may be said that

its policies and operations have almost solely been directed by him.

On December 2, 1926, shortly after the corporation was organized, the board of directors, nominally acting by Mossman and McAllaster, entered into a contract with Hildt whereby, for services rendered and to be rendered by him to the corporation, he should receive its stock of the par value of $300,000. The stock was all finally issued to Hildt. Complaint is made of this contract and the issuance of the stock thereunder. After its issue to Hildt, $137,000 of the stock was transferred to McAllaster and his associates in a concern known as Jelle & Co., and $15,-000 to Mossman.

It is contended by complainants that this contract and the stock issued thereunder should be canceled as a fraud upon complainant stockholders, since the trust relation occupied by the officers and directors responsible for its issue invalidated the same. Defendants ask that the transaction should not be disturbed because of two principal reasons: (1) That under the Delaware law the corporation paid Hildt in stock for services, and in the absence of actual fraud the judgment of the directors on that subject is conclusive; (2) that this court is without jurisdiction to inquire into such transaction, because in so doing it would exercise visitorial powers over a foreign corporation. To uphold the latter proposition, defendants place much reliance on the case of Rogers v. Guaranty Trust Co., 288 U. S. 123, 53 S. Ct. 295, 298, 77 L. Ed. 652, 89 A. L. R. 720. That case involved the cancellation of certain stock allegedly wrongfully allotted to certain officers, directors, and employees of the American Tobacco Company, a New Jersey corporation. The suit arose in the District Court of the Southern District of New York, 60 F.(2d) 106, and the bills of complaint were dismissed without prejudice to the enforcement of the rights of plaintiff, if any, in the courts of New Jersey. The majority opinion of the Supreme Court, written by Mr. Justice Butler, contains the following expressions:

"While the District Court had jurisdiction to adjudge the rights of the parties, it does not follow that it was bound to exert that power. * * * It was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum. * * * Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits

relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case. * * *

"The complaint shows that as of its date seven directors of the tobacco company were not residents of New York. Only 6 allottees are before the court. The others, over 525, are not mentioned in the complaint. * * * As the tobacco company, in addition to its registered office, has property, operates directly or through subsidiary branch factories in New Jersey and carries on business there and in other states and countries, it may not be deemed to have been organized in that state as a mere matter of convenience for the purpose of carrying on all its business in another state or be deemed in New York to be a local concern. This case is wholly unlike Williamson v. Missouri-Kansas Pipe Line Co. (C. C. A. 7th) 56 F.(2d) 503, supra, relied on by plaintiff."

The above-quoted excerpt from the opinion shows a state of facts greatly dissimilar to those involved here. I can see no reason on the ground of either convenience, efficiency, or justice to withhold relief to the complainants in this action and compel them to go to the courts of Delaware for redress of their grievances. The issuance of this large block of stock to Hildt, who at all times drew a salary for his services to the corporation, was wholly unwarranted. The directors occupied a fiduciary relation to the corporation and its stockholders, and to divert such a large block of its stock to its president, in the manner shown by the evidence here, was a breach of this trust. I am of the opinion that this contract and the stock issued thereunder should be canceled, with the exception of the stock in the par value of $15,000, which was transferred to the defendant Mossman. The evidence shows that he performed various legal services for the corporation, and I think, in equity, he is entitled to this stock as compensation, as by the transfer it was intended to compensate him for his services.

The judgment of the court will be that the remainder of said stock, or $285,000 in par value received by Hildt and McAllaster and his associates, be surrendered for cancellation; but in the event such stock, or any portion thereof, has been transferred to other parties not before the court, the said defendants shall account to the corporation for its

**422**

fair and reasonable value, to be determined by the court upon a further hearing.

■ It was developed by the evidence that defendant Hildt, during his management of the corporation, bought various royalties with funds of the corporation, taking title in his name. Among the transactions of this kind was the purchase of the "Shell-Hopper" royalty. Ten acres of this royalty was purchased in September, 1929, for a total consideration of $24,000, and the title taken in the name of Hildt. Five acres was deeded by Hildt to the corporation and five acres retained by him. He repaid the sum of $12,000 for the purchase price of the royalty retained by him. The evidence shows that on this royalty Hildt has received, since its purchase, the sum of approximately $19,000. As a director and officer of the corporation Hildt stood in a strictly fiduciary relation towards the corporation and its stockholders, and such a use of the corporate assets for his own profit was a violation of this fiduciary relation. Under the principles announced by such cases as Wardell v. Union P. R. Co., 103 U. S. 655, 26 L. Ed. 509; Johnson v. Umsted (C. C. A.) 64 F.(2d) 316; Davis v. Pearce (C. C. A.) 30 F.(2d) 85; Bently v. Zelma Oil Co., 76 Okl. 116, 184 P. 131, and other like cases, Hildt should be required to convey this property to the corporation and account for the profits made by him therefrom during the time he has held title thereto. Likewise, a similar accounting should be had as to all other transactions of this nature, as well as to the transactions where Hildt has sold or purchased royalties for the corporation and received a commission thereon. It is therefore held that defendant Hildt should make a full and complete report and account of all such transactions to the court so that upon a further hearing it may be determined for what amount he may be required to account. A report of the full circumstances of each particular transaction of this nature is necessary in order that a proper determination may be made of the amount due by Hildt to the corporation. After such report is presented, the court will then upon further hearing determine the amount due and the terms of the accounting.

■ Since the hearing has been had, and pursuant to the suggestion of the court as to a reorganization of the board of directors of the corporation, it appears that defendant McAllaster has resigned as a member of the board. I am of the opinion that a proper reorganization of the corporate management acceptable to both complainants and defendants may be had, and that the corporate business may be carried on without the intervention of a receiver. The financial condition of the company is good, and I believe with proper management the interests of the stockholders can be amply protected without the expense and inconvenience incident to a receivership. Therefore, at this time, the complainants' application for a receiver for the assets of the corporation is denied, but jurisdiction is retained of the case for the purpose of effecting the accounting above required and for all other purposes, so that the properties of the corporation may be properly conserved and the welfare of its stockholders protected.

A decree in accordance with the views above expressed may be drawn by counsel and presented for the signature of the court.